JMK:WK/MEB/DE
F. #2018R00999

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – X

| | |
|---|---|
| UNITED STATES OF AMERICA | TO BE FILED UNDER SEAL |
| - against - | COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION |
| JOSE TOMAS MENESES, | FOR ARREST WARRANT |
| Defendant. | (T. 18, U.S.C., §§ 371 and 3551 et seq.) |

– – – – – – – – – – – – – – – – X

EASTERN DISTRICT OF NEW YORK, SS:

PATRICK KILLEEN, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

Upon information and belief, in or about and between 2012 and April 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSE TOMAS MENESES, together with others, did knowingly and willfully conspire to commit offenses against the United States, to wit: being an employee and agent of a domestic concern, and while in the territory of the United States, to willfully and corruptly make use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be offered, given, and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of

such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof, to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; or (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Asphalt Company, a company the identity of which is known to the affiant, and others in obtaining and retaining business for and with, and directing business to, Asphalt Company and other related companies, contrary to Title 15, United States Code, Sections 78dd-2 and 78dd-3.  In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant JOSE TOMAS MENESES, together with others, committed and caused to be committed overt acts as described herein.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

The source of your affiant's information and the grounds for his belief are as follows:[1]

1.      I have been a Special Agent with FBI for more than 15 years.  During my career as a federal law enforcement officer, I have personally participated in numerous investigations, the execution of numerous search and arrest warrants, and the debriefing of cooperating witnesses and informants, all related to various types of financial crime, fraud, and corruption.  Among other federal crimes, I have investigated offenses involving conspiracies,

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.  In addition, where I rely on statements made by others, such statements are set forth in part and in substance unless otherwise indicated.

public corruption, bank fraud and money laundering, as well as violations of the Foreign Corrupt Practices Act ("FCPA").

2. In addition to my training and experience, I am familiar with the information contained in this complaint and affidavit based upon: (i) my review of documents, records and reports, (ii) interviews of witnesses, and (iii) discussions with other law enforcement personnel.

I. BACKGROUND

    A. The Foreign Corrupt Practices Act Generally

3. The FCPA, as amended, Title 15, United States Code, Sections 78dd-1 et seq., was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

    B. Entities and Individuals

4. Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA and its subsidiaries and affiliates were responsible for exploration, production, refining, transportation and trade in energy resources in Venezuela. Among other products, PDVSA supplied asphalt to companies around the world and also provided funding for various operations of the Venezuelan government. PDVSA and its wholly owned subsidiaries were "instrumentalities" of the Venezuelan government, as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A). PDVSA officers and employees were "foreign officials," as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A).

3

5.      Asphalt Company was a United States-based company that stored, transported and traded asphalt.  At all relevant times, Asphalt Company was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2 and 78dd-2(h)(1)(B).

6.      Asphalt Trading, a company the identity of which his known to the affiant, was one of a group of companies related to Asphalt Company.  Asphalt Trading was incorporated under the laws of the Bahamas, but its principal place of business was in the same location as Asphalt Company's principal place of business in the United States.  Therefore, at all relevant times, Asphalt Trading was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2 and 78dd-2(h)(1)(B).

7.      Asphalt Company Subsidiary, a company the identity of which is known to the affiant, was a subsidiary of Asphalt Company that handled Asphalt Company's trading activity from an office in Switzerland.

8.      Joint Venture Co., a company the identity of which is known to the affiant, was a joint venture between Asphalt Company and a European asphalt company.

9.      Swiss Asphalt Company, a company the identity of which is known to the affiant, was in the asphalt business and was, at times, a competitor to Asphalt Company.  In or about and between 2012 and 2015, Asphalt Company entered into contracts with Swiss Asphalt Company to purchase or sell asphalt.

10.     The defendant JOSE TOMAS MENESES was a citizen of Venezuela and legal permanent resident of the United States as of at least 2017.  MENESES worked as a trader at Asphalt Company in or about and between 2012 and 2018.  At all relevant times, MENESES

was an "employee" of a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2 and 78dd-2(h)(1)(B).

11. Asphalt Trading Employee, an individual whose identity is known to the affiant, was a United States citizen and a trader at Asphalt Company and related companies in or about and between 2006 and 2017. At all relevant times, Asphalt Trading Employee was a "domestic concern" and an "employee" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2 and 78dd-2(h)(1)(B).

12. Consultant, an individual whose identity is known to the affiant, was a citizen of Venezuela and a naturalized U.S. citizen as of approximately 2014 who worked at various times as an agent for Asphalt Company, Asphalt Trading, Asphalt Company Subsidiary and Joint Venture Co. At all relevant times, Consultant was a "domestic concern" and an "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2 and 78dd-2(h)(1)(B).  .

13. PDVSA Official #1, an individual whose identity is known to the affiant, was a dual citizen of Spain and Venezuela and was involved in the sale of PDVSA asphalt in or about and between 2011 and March 2015. During that time, PDVSA Official #1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A) .

14. PDVSA Official #2, an individual whose identity is known to the affiant, was a citizen of Venezuela and the supervisor of PDVSA Official #1 in or about and between 2011 and 2015. During that time, PDVSA Official #2 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A).

15. PDVSA Official #3, an individual whose identity is known to the affiant, was a citizen of Venezuela and an analyst involved in the sale of PDVSA asphalt in or about and between 2011 and 2016. During that time, PDVSA Official #3 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A).

16. PDVSA Official #4, an individual whose identity is known to the affiant, was a citizen of Venezuela and an employee involved in the sale of PDVSA asphalt in or about and between 2011 and 2018. During that time, PDVSA Official #4 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A).

## II. THE BRIBERY SCHEME

17. In or about and between 2012 and May 2018, the defendant JOSE TOMAS MENESES was a trader at Asphalt Company. Based upon information provided by two cooperating witnesses involved in the bribery scheme,[2] a review of bank records, a review of WhatsApp and e-mail communications obtained from a variety of sources and involving MENESES, and a review of contracts, agreements, and other documents, I have learned that beginning in or about 2012, MENESES worked with Consultant, Asphalt Trading Employee, executives of Asphalt Company and others to pay bribes to various PDVSA officials to, among other things: (a) purchase asphalt from PDVSA; (b) acquire inside, non-public information from

---

[2] I am aware of the identities of the two cooperating witnesses referred to above. These witnesses each pled guilty to conspiracy to violate the FCPA pursuant to written cooperation agreements with the government, and are cooperating in the hope of receiving a more lenient sentence in connection with their cases. The information provided by these two cooperating witnesses has been corroborated by a review of bank records, e-mail and other messaging communications gathered during the investigation, and by information provided by other witnesses interviewed during the investigation.

PDVSA to obtain an improper advantage in the purchase and sale of asphalt; and (c) recover certain late fees, called demurrage fees, owed by PDVSA to Swiss Asphalt Company related to the loading of asphalt.  Specifically, based upon the information and evidence itemized above, I have learned the following:

    A.    <u>2012-2015:  Bribes to Win Contracts</u>

    18.    Following a dispute between PDVSA and Asphalt Company prior to 2012, PDVSA refused to sell asphalt to Asphalt Company or companies related to Asphalt Company. To circumvent this prohibition, Asphalt Company and Swiss Asphalt Company agreed that Swiss Asphalt Company would purchase asphalt from PDVSA at the request and direction of Asphalt Company and then resell that asphalt to Asphalt Company at a small premium.  At this same time, in or about 2012, and continuing to in or about 2015, the two cooperating witnesses described above indicate that the defendant JOSE TOMAS MENESES agreed with Consultant, Asphalt Trading Employee, PDVSA Official #1 and PDVSA Official #2 that Consultant would pay bribes to PDVSA Official #1 and PDVSA Official #2 on behalf of Asphalt Company, Asphalt Trading and Asphalt Company Subsidiary.  These bribes were paid so that PDVSA Official #1 and PDVSA Official #2 would assist Swiss Asphalt Company in obtaining and retaining term contracts to purchase asphalt from PDVSA so that Swiss Asphalt Company, in turn, could resell asphalt to Asphalt Company, Asphalt Trading and Asphalt Company Subsidiary.

    19.    As a part of this arrangement, from approximately 2012 to 2015, Asphalt Company and Asphalt Company Subsidiary agreed to pay Consultant a commission of approximately 45 cents for every barrel of asphalt Swiss Asphalt Company purchased from PDVSA and provided to Asphalt Company.  Based upon statements made by the cooperating

7

witnesses described above, I have learned that Consultant, in turn, agreed to pay a bribe of approximately 20 cents to PDVSA Official #1 for each barrel of asphalt PDVSA sold to Swiss Asphalt Company, and that the defendant JOSE TOMAS MENESES, who was one of the primary individuals at Asphalt Company responsible for the PDVSA relationship, was in direct communication with Consultant and was aware of this bribe agreement and the payments made pursuant to the agreement. I am further informed by the statements made by a cooperating witness that PDVSA Official #1 shared a portion of his bribe payments with PDVSA Official #2, and that Consultant also separately agreed with the defendant JOSE TOMAS MENESES to pay MENESES a kickback of 5 cents for each barrel of asphalt that PDVSA sold to Swiss Asphalt Company.

20. Bank records indicate that, from approximately 2013 to 2015, Asphalt Company and Asphalt Company Subsidiary paid Consultant approximately $1.2 million in connection with the above-referenced scheme. Consultant, in turn, often used a Florida-based bank account to wire bribe payments to a bank account in Panama for PDVSA Official #1 as part of the scheme. I have seen bank records corroborating the payments from Consultant to PDVSA Official #1 as part of the scheme.

B. 2015-2018:  Bribes for Inside Information

21. In approximately March 2015, PDVSA Official #1 stopped working at PDVSA.

22. In or about the middle of 2015 and April 2018, the defendant JOSE TOMAS MENESES agreed with Consultant, Asphalt Trading Employee and PDVSA Official #1 that Consultant would pay bribes to PDVSA Official #1 who would in turn pay bribes to PDVSA Official #4, in exchange for supplying PDVSA Official #1 with inside, non-public information.

As a part of this agreement, PDVSA Official #1 in turn provided this information to Asphalt Company and Asphalt Company Subsidiary, through Consultant, to give them a competitive advantage in the international purchase and sale of asphalt.  Consultant also paid bribes directly to PDVSA Official #3 for the same purpose.

23. With the approval of high-level Asphalt Company executives, and to fund and disguise the bribe payments paid by Consultant through PDVSA Official #1, Consultant entered into a sham consulting agreement with Joint Venture Co. pursuant to which Consultant purportedly received a $2,000 monthly retainer.

C. 2015-2018:  Bribes to Recover Demurrage Fees

24. The contracts pursuant to which PDVSA agreed to supply Swiss Asphalt Company with asphalt called for financial penalties, called demurrage fees, in the event of delays by PDVSA in delivering and loading asphalt onto Swiss Asphalt Company's ships.  Due to such delays between in or about 2015 and 2018, PDVSA incurred more than three million dollars in demurrage fees.

25. From approximately March 2015 to 2018, high-level executives at Asphalt Company provided approval for Consultant to pay PDVSA Official #1 10 percent of any demurrage fees paid by PDVSA to Swiss Asphalt Company.  The purpose of this payment was to induce PDVSA Official #1 to pay bribes to various PDVSA employees in return for authorizing the payment of demurrage fees to Swiss Asphalt Company.  Swiss Asphalt Company, in its role as a pass-through, then remitted a portion of the demurrage fees to Asphalt Company.  In furtherance of this scheme, among other things, the defendant JOSE TOMAS MENESES communicated via e-mail and the messaging service WhatsApp with Consultant and

Asphalt Trading Employee. I have translations of certain of these WhatsApp messages, which were written primarily in Spanish.

26. As a result of the bribery scheme, and with the assistance of the defendant JOSE TOMAS MENESES, Asphalt Company obtained approximately $250,000 in demurrage fees.

27. In furtherance of the conspiracy and to effect its objects, in the Eastern District of New York and elsewhere, the defendant JOSE TOMAS MENESES, together with others, committed and caused to be committed, among others, the following:

### OVERT ACTS

(a) On or about September 19, 2013, MENESES e-mailed Consultant requesting information from PDVSA Official #1 using the code name "Oiltrader" to refer to PDVSA Official #1.

(b) On or about August 18, 2014, MENESES forwarded an internal PDVSA e-mail that he had received from PDVSA Official #1, via Consultant, regarding PDVSA's assessment of the demurrage fees it owed in connection with various asphalt shipments.

(c) On or about August 20, 2015, MENESES sent an e-mail to Consultant and Asphalt Trading Employee asking Consultant for information from PDVSA Official #3 using the code name "Tony" to refer to PDVSA Official #3.

(d) On or about February 11, 2016, MENESES e-mailed the director of Asphalt Company Subsidiary, copying Asphalt Trading Employee and an executive at Asphalt Company, attaching a Past Due Statement from Consultant and stating:

10

> Per information from [the executive at Asphalt Company] he has approved and giving [sic] you payment instructions for the attached invoice. Since we are very sensitive on time due to new activities are ready to start. Please advise me as soon as wire transfer goes out as I need to manage the situation.

(e) On or about March 28, 2018, Consultant wired a $3,000 payment from an account he controlled at TD Bank, located in Brooklyn, New York, to an account controlled by PDVSA Official #1 in Panama.

III. <u>CONCLUSION</u>

WHEREFORE, your affiant respectfully requests that an arrest warrant be issued for the defendant JOSE TOMAS MENESES so that he may be dealt with according to law.

IT IS FURTHER REQUESTED that, because public filing of this document at this time could result in a risk of flight by the defendant, as well as jeopardize the government's ongoing investigation, all papers submitted in support of this application, including the complaint and arrest warrant, be sealed until further order of the Court.

_____
PATRICK KILLEEN
Special Agent
Federal Bureau of Investigation

Sworn to before me this
\_\_\_th day of June, 2018

_____
THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK