JMK:WK/DE/MEB
F. #2018R00999

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against –

JOSE TOMAS MENESES,

    Defendant.

INFORMATION

Cr. No. 18-358 (ENV)
(T. 18, U.S.C., §§ 371, 981(a)(1)(C) and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE UNITED STATES CHARGES:

At all times relevant to this Information, unless otherwise stated:

The Defendant and Referenced Individuals and Entities

1. Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA and its subsidiaries and affiliates were responsible for exploration, production, refining, transportation and trade in energy resources in Venezuela. Among other products, PDVSA supplied asphalt to companies around the world and also provided funding for various operations of the Venezuelan government. PDVSA and its wholly-owned subsidiaries were "instrumentalities" of the Venezuelan government, as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A). PDVSA officers and employees were "foreign officials," as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 77dd-3(f)(2)(A).

2. Asphalt Company, a company the identity of which is known to the United States, was a United States-based company that stored, transported and traded asphalt.

Asphalt Company was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a) and 78dd-2(h)(1)(B).

3. Asphalt Trading, a company the identity of which is known to the United States, was one of a group of companies related to Asphalt Company. Asphalt Trading was incorporated under the laws of the Bahamas, but its principal place of business was in the same location as Asphalt Company's principal place of business in the United States. Therefore, at all relevant times, Asphalt Trading was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a) and 78dd-2(h)(1)(B).

4. Asphalt Company Subsidiary, a company the identity of which is known to the United States, was a subsidiary of Asphalt Company that handled Asphalt Company's trading activity from an office in Switzerland.

5. Joint Venture Co., a company the identity of which is known to the United States, was a joint venture between Asphalt Company and a European asphalt company, the identity of which is known to the United States.

6. Swiss Asphalt Company, a Swiss company the identity of which is known to the United States, was in the asphalt business and was, at times, a competitor to Asphalt Company. In or about and between 2012 and 2015, Asphalt Company entered into various contracts with Swiss Asphalt Company to purchase and sell asphalt.

7. The defendant JOSE TOMAS MENESES was a citizen of Venezuela and legal permanent resident of the United States as of at least 2017. MENESES worked as a trader at Asphalt Company in or about and between 2012 and 2018. MENESES was an "employee" and "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(a) and 78dd-2(h)(1)(B).

8. Asphalt Trading Employee, an individual whose identity is known to the United States, was a United States citizen and a trader at Asphalt Company and related companies in or about and between 2006 and 2017. Asphalt Trading Employee was a "domestic concern" and "employee" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(a), 78dd-2(h)(1)(A) and 78dd-2(h)(1)(B).

9. Consultant, an individual whose identity is known to the United States, was a citizen of Venezuela and a naturalized United States citizen as of approximately 2014 who worked at various times as an agent for Asphalt Company, Asphalt Trading, Asphalt Company Subsidiary and Joint Venture Co. At all relevant times, Consultant was a "domestic concern" and an "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(a), 78dd-2(h)(1)(A) and 78dd-2(h)(1)(B).

10. PDVSA Official #1, an individual whose identity is known to the United States, was a dual citizen of Spain and Venezuela and was involved in the sale of PDVSA asphalt in or about and between 2011 and March 2015. During that time, PDVSA Official #1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A).

11. PDVSA Official #2, an individual whose identity is known to the United States, was a citizen of Venezuela and a supervisor of PDVSA Official #1 in or about and between 2011 and 2015. During that time, PDVSA Official #2 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A).

12. PDVSA Official #3, an individual whose identity is known to the United States, was a citizen of Venezuela and an analyst involved in the sale of PDVSA asphalt in or

about and between 2011 and 2016. During that time, PDVSA Official #3 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A).

13.   PDVSA Official #4, an individual whose identity is known to the United States, was a citizen of Venezuela and an employee involved in the sale of PDVSA asphalt in or about and between 2011 and 2018. During that time, PDVSA Official #4 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2)(A).

<u>The Foreign Corrupt Practices Act</u>

14.   The FCPA was enacted by Congress for the purpose of, among other things, making it unlawful to corruptly offer, promise, authorize or pay money or anything of value, directly or indirectly, to a foreign official for the purpose of obtaining or retaining business for, or directing business to, any person.

<u>The Bribery Scheme</u>

15.   As set forth above, in or about and between 2012 and May 2018, the defendant JOSE TOMAS MENESES was a trader at Asphalt Company. Beginning in or about 2012, MENESES worked with Consultant, Asphalt Trading Employee, executives of Asphalt Company and others to pay bribes to various PDVSA officials to, among other things: (a) purchase asphalt from PDVSA; (b) acquire inside, non-public information from PDVSA to obtain an improper advantage in the purchase and sale of asphalt; and (c) recover certain late fees, called demurrage fees, owed by PDVSA to Swiss Asphalt Company related to the loading of asphalt.

A.  2012 - 2015: Bribes to Win Contracts

16. Following a dispute between PDVSA and Asphalt Company prior to 2012, PDVSA refused to sell asphalt to Asphalt Company or companies related to Asphalt Company. To circumvent this prohibition, Asphalt Company and Swiss Asphalt Company agreed that Swiss Asphalt Company would purchase asphalt from PDVSA at the request and direction of Asphalt Company and then resell that asphalt to Asphalt Company at a small premium. At the same time, beginning in or about 2012 and continuing to in or about 2015, the defendant JOSE TOMAS MENESES agreed with Consultant, Asphalt Trading Employee, PDVSA Official #1 and PDVSA Official #2 that Consultant would pay bribes to PDVSA Official #1 and PDVSA Official #2 on behalf of Asphalt Company, Asphalt Trading and Asphalt Company Subsidiary. These bribes were to be paid in exchange for PDVSA Official #1 and PDVSA Official #2 assisting Swiss Asphalt Company in obtaining and retaining term contracts to purchase asphalt from PDVSA. Swiss Asphalt Company would then, in turn, resell asphalt to Asphalt Company, Asphalt Trading and Asphalt Company Subsidiary.

17. Pursuant to this agreement, from approximately 2012 to 2015, Asphalt Company and Asphalt Company Subsidiary paid Consultant a commission of approximately 45 cents for every barrel of asphalt that Swiss Asphalt Company purchased from PDVSA and provided to Asphalt Company. Consultant in turn paid a bribe to PDVSA Official #1 of approximately 20 cents for each barrel of asphalt that PDVSA sold to Swiss Asphalt Company. PDVSA Official #1 shared a portion of his bribe payments with PDVSA Official #2. High-level executives at Asphalt Company, Asphalt Trading and Asphalt Company Subsidiary authorized these bribe payments to PDVSA Official #1 and PDVSA Official #2. Consultant also separately

agreed with the defendant JOSE TOMAS MENESES to pay MENESES a kickback of five cents for each barrel of asphalt that PDVSA sold to Swiss Asphalt Company.

18. In furtherance of this bribery scheme, from approximately 2013 to 2015, Asphalt Company and Asphalt Company Subsidiary paid Consultant approximately $1.2 million, from which Consultant in turn made bribe payments to PDVSA Official #1 and PDVSA Official #2, and kickback payments to the defendant JOSE TOMAS MENESES.

B. <u>2015 - 2018: Bribes for Inside Information</u>

19. In approximately March 2015, PDVSA Official #1 stopped working at PDVSA and began working at a company that did business with PDVSA, as a counter-party, buying and selling petrochemical products.

20. In or about and between March 2015 and April 2018, the defendant JOSE TOMAS MENESES agreed with Consultant, Asphalt Trading Employee and PDVSA Official #1 that Consultant would pay PDVSA Official #1 $500 per month to bribe various PDVSA employees, including PDVSA Official #3 and PDVSA Official #4, in exchange for supplying PDVSA Official #1 with inside, non-public information. As a part of this agreement, PDVSA Official #1 agreed to provide, and in fact provided, this information to Asphalt Company and Asphalt Company Subsidiary, through Consultant, to give them a competitive advantage in the international purchase and sale of asphalt. Consultant also agreed to pay, and in fact paid, bribes directly to PDVSA Official #3 for the same purpose.

21. With the approval of high-level Asphalt Company executives, and in order to fund and disguise the $500 monthly bribe payments paid by Consultant through PDVSA Official #1, Consultant entered into a sham consulting agreement with Joint Venture Co., pursuant to which Consultant purportedly received a $2,000 monthly retainer.

C.    2015 - 2018:  Bribes to Recover Demurrage Fees

22.    The contracts pursuant to which PDVSA agreed to supply Swiss Asphalt Company with asphalt called for financial penalties, called demurrage fees, in the event of delays by PDVSA in delivering and loading asphalt onto Swiss Asphalt Company's ships.  Due to such delays in or about and between 2015 and 2018, PDVSA incurred more than three million dollars in demurrage fees.

23.    From approximately March 2015 to 2018, high-level executives at Asphalt Company provided approval for Consultant to pay PDVSA Official #1 10 percent of any demurrage fees paid by PDVSA to Swiss Asphalt Company.  The purpose of this payment was that PDVSA Official #1 would in turn pay bribes to various PDVSA employees in exchange for them authorizing the payment of demurrage fees to Swiss Asphalt Company.  Swiss Asphalt Company, in its role as a pass-through, then remitted a portion of the demurrage fees to Asphalt Company.  In furtherance of this scheme, among other things, the defendant JOSE TOMAS MENESES communicated via e-mail and the messaging service WhatsApp with Consultant and Asphalt Trading Employee.

24.    As a result of the scheme, and with the assistance of the defendant JOSE TOMAS MENESES, Asphalt Company obtained approximately $250,000 in demurrage fees.

CONSPIRACY TO VIOLATE THE FCPA

25.    The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

26.    In or about and between 2012 and April 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

JOSE TOMAS MENESES, together with others, did knowingly and willfully conspire to commit one or more offenses against the United States, to wit:

(a) being an employee and agent of a domestic concern, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be offered, given, and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Asphalt Company and related entities in obtaining and retaining business for and with, and directing business to, Asphalt Company and others, contrary to Title 15, United States Code, Section 78dd-2; and

(b) while in the territory of the United States, corruptly to make use of the mails and means and instrumentalities of interstate commerce and to do any other act in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing

8

that all or a portion of such money and thing of value would be offered, given and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Asphalt Company and related entities in obtaining and retaining business for and with, and directing business to, Asphalt Company and others, contrary to Title 15, United States Code, Section 78dd-3.

27. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant JOSE TOMAS MENESES, together with others, did commit and cause the commission of, among others, the following:

### OVERT ACTS

(a) On or about September 19, 2013, MENESES e-mailed Consultant requesting information from PDVSA Official #1 using the code name "Oiltrader" to refer to PDVSA Official #1.

(b) On or about August 18, 2014, MENESES forwarded an e-mail to Asphalt Trading Employee that MENESES had received from Consultant and that Consultant had previously received from PDVSA Official #1. This e-mail contained an internal PDVSA e-mail regarding PDVSA's assessment of the demurrage fees it owed in connection with various asphalt shipments.

(c) On or about August 20, 2015, MENESES sent an e-mail to Consultant and Asphalt Trading Employee asking Consultant for information from PDVSA Official #3 or PDVSA Official #4, and using the code name "Tony" to refer to PDVSA Official #3.

(d) On or about February 11, 2016, MENESES e-mailed the director of Asphalt Company Subsidiary, copying Asphalt Trading Employee and an executive at Asphalt Company, attaching a Past Due Statement from Consultant and stating:

> Per information from [the executive at Asphalt Company] he has approved and giving [sic] you payment instructions for the attached invoice. Since we are very sensitive on time due to new activities are ready to start. Please advise me as soon as wire transfer goes out as I need to manage the situation.

(e) On or about March 28, 2018, Consultant wired a $3,000 payment from an account he controlled at TD Bank, located in Brooklyn, New York, to an account controlled by PDVSA Official #1 in Panama.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

28. The United States gives notice to defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

29. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

*/s/ Richard P. Donoghue*
RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York


_____
SANDRA L. MOSER
Acting Chief, Fraud Section
Criminal Division, Dept. of Justice